UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:24CR465 JMD (SPM) |
| ) | |
| **PARIS McPETERS,** ) | |
| ) | |
| **Defendant.** ) | |

**REPORT, RECOMMENDATION AND
MEMORANDUM OPINION OF
UNITED STATES MAGISTRATE JUDGE REGARDING
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). Defendant Paris McPeters is charged in an indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1). Currently pending before the Court is McPeters's Motion to Suppress evidence police seized from his vehicle on June 18, 2024. ECF No. 35. In the motion, McPeters asserts the firearms he is charged with unlawfully possessing were seized following an unconstitutional search of his vehicle. ECF Nos. 35 & 60. McPeters also moves to suppress custodial statements he made on grounds that he was interrogated in violation of the Fifth Amendment and his statements led to the unlawful search and unlawful seizure of the firearms police found in his vehicle. The United States has filed responses opposing these arguments. ECF Nos. 41 & 68.[1]

---

[1] McPeters has separately moved for dismissal of the indictment on grounds that 18 U.S.C. §922(g)(1) violates the Second Amendment both on its face and as applied to him. ECF No. 36. With leave of Court, McPeters has also asserted additional *pro se* arguments challenging the constitutionality of §922(g)(1). ECF Nos. 49, 69 & 70. The United States has filed responses opposing these arguments. ECF Nos. 40 & 67. The Court will address McPeters's motion to dismiss the indictment in a separate Report and Recommendation.

The undersigned has carefully considered the parties' written submissions, the applicable law, and evidence presented at the evidentiary hearing. For the reasons discussed below, this Court recommends that the motion suppress evidence and statements be denied.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On September 4, 2024, a federal grand jury returned an indictment charging McPeters with knowingly unlawfully possessing a firearm on or about June 18, 2024, after having been previously convicted of one or more crimes, in violation of 18 U.S.C. §922(g)(1). McPeters was arrested on September 11, 2024, and, on the same day, he was arraigned at an initial appearance. Through counsel, McPeters requested and was initially granted until October 11, 2024, to file pretrial motions. McPeters requested additional time to file pretrial motions and, on June 9, 2025, McPeters filed the motion to suppress evidence and statements currently pending before the Court. On June 10, 2025, with leave of court, McPeters filed his motion to dismiss the indictment. ECF No. 36. On June 24, 2025, the United States filed its response opposing McPeters's motion. *See* ECF No. 41.

On August 8, 2025, at the request of McPeters's counsel the Court held a case status hearing at which the Court discussed the possibility of McPeters representing himself considering McPeters's insistence that his court-appointed attorney press certain issues regarding the constitutionality of 18 U.S.C. §922(g). Following the case status hearing, and after conferring with the assigned District Judge, the Court granted McPeters leave to file a *pro se* motion raising a limited constitutional challenge to 18 U.S.C. §922(g)(1).

Thereafter, on September 9, 2025, the undersigned held an evidentiary hearing on McPeters's suppression motion.[2] The United States offered the testimony of Hazelwood Police Officer Erik Eickhoff. The United States also introduced police body worn camera footage (Govt. Ex. 1); the Hazelwood Department Operational Guideline (Govt. Ex. 2); and a Tow Sheet for Bolins Towing (Govt. Ex. 3). McPeters offered no additional witnesses or evidence but cross-examined Officer Eickhoff. Officer Eickhoff's testimony was credible and consistent with the video footage admitted into evidence. At the close of the evidentiary hearing, the parties requested and were granted time to request a transcript of the hearing and to file post-hearing briefs. The transcript of the evidentiary hearing was filed on September 16, 2025. ECF No. 57. Post hearing briefing was completed on December 29, 2025. ECF Nos. 60, 67, 68 & 70. Based upon the evidence adduced at the hearing, the oral arguments made on the record, and the written submissions of the parties, the undersigned makes the following findings of fact and conclusions of law.

## II.     FACTUAL FINDINGS

At the time of the evidentiary hearing, Officer Erik Eickhoff had worked as a patrol officer for the Hazelwood Police Department (HPD) for four years. Before that, he was a patrol officer with the Bellefontaine Police Department for five years. On June 18, 2024, after observing a 2009 Lincoln MKX changing lanes without utilizing its blinker, Officer Eickhoff initiated a traffic stop of the Lincoln for failure to maintain a single lane. The Lincoln stopped in the middle of the intersection of Howdershell Rd. and Riverwood Estates Blvd. Officer Eickhoff testified that Howdershell Road is a busy county road, and he was concerned that the vehicle had

---

[2] At the evidentiary hearing, the parties agreed the Court could decide the motion to dismiss based on their written submissions and offered no oral argument or evidence with respect to the motion to dismiss.

stopped at the junction of two busy roads and was taking up a lane of traffic for passing motorists.

Officer Eickhoff, who was wearing a body camera, contacted the driver, later identified as Defendant McPeters. The entire interaction between Officer Eickhoff and the defendant was captured on the officer's body camera video recording, which was admitted into evidence as Govt. Exhibit 1. After collecting McPeters's identification and insurance card, Officer Eickhoff returned to his marked patrol vehicle and conducted a REJIS computer inquiry of the defendant's information. The inquiry reflected that there was an active warrant for McPeters's arrest for Involuntary Manslaughter and Assault Second Degree. At that point, Officer Eickhoff determined he would need to arrest McPeters on the warrant and tow the vehicle pursuant to the HPD tow policy.

The Hazelwood tow policy authorizes "[a]ny Police Officer within Hazelwood jurisdiction . . . [to] authorize a towing company to remove abandoned property to a place of safety." Govt. Exh. 3, p. 2. The tow policy allows an officer to tow "[a]ny unattended abandoned property illegally left standing upon any highway or bridge if the abandoned property is left in a position or under such circumstances as to obstruct the normal movement of traffic where there is no reasonable indication that the person in control of the property is arranging for its immediate control or removal." *Id.* The Hazelwood tow policy further allows an officer to tow "[a]ny abandoned property for which the person operating such property is arrested for an alleged offense for which the officer is required to take the person into custody and where such person is unable to arrange for property's timely removal." *Id.*

Officer Eickhoff testified that he believed the vehicle would need to be towed because McPeters would be taken into custody and because the location of the vehicle made it a traffic

4

hazard. Considering the nature of outstanding warrants, Officer Eickhoff also called for back-up in part for officer safety. Hazelwood Police Officer Edward Meyer arrived as back-up and Officer Eickhoff placed McPeters under arrest on the warrant but did not immediately advise McPeters of his *Miranda* rights. Officer Eickhoff requested a tow truck and requested that the HPD dispatch run a criminal history of McPeters. Officer Eickhoff subsequently advised McPeters that police would be towing his vehicle and would need to conduct an inventory search of the vehicle.

In the interest of public safety, including the safety of officers and the tow truck driver, before searching McPeters's vehicle, Officer Eickhoff asked McPeters if he had any firearms or drugs in the vehicle. McPeters responded "yeah" as he was looking at the officer. Officer Eickhoff explained that, based on his training and experience, McPeters's response to his question as to whether there were guns or drugs in the vehicle established probable cause to search the vehicle. Officer Eickhoff asked McPeters what he had in the vehicle, but McPeters did not answer, stating only, "I mean, you know". Govt. Ex 1 at 10:57. Officer Eickhoff testified that, based on his interactions with McPeters, he advised Officer Meyer that they would be looking for either a firearm or drugs in McPeters's car.

Officer Eickhoff explained that his search of McPeters's vehicle was both an inventory search pursuant to the HPD tow policy as well as a search for contraband based on probable cause. During their search of the vehicle, the officers found and seized Anderson Manufacturing 5.56 caliber semi-automatic rifle with a loaded 100 round drum magazine, a second loaded 100 round 5.56 caliber drum magazine, a Smith & Wesson .40 caliber semi-automatic pistol bearing with a loaded 50 round drum, multiple other magazines and 357 additional rounds of ammunition. Officer Eickhoff received confirmation that McPeters was a convicted felon,

5

advised McPeters of his *Miranda* rights, and generated a police report for felon in possession of a weapon.

While he was waiting for the tow truck to arrive, Officer Eickhoff filled out a Tow Inventory Report as required by the HPD tow policy. Govt. Exh. 2. Officer Eickhoff explained that he did not list the guns, magazines, and ammunition on the tow form because those items were seized as evidence in their investigation, removed from McPeters's vehicle, and documented in the police report. Officer Eickhoff testified that it was his standard operating procedure in filling out tow forms to list only items left in the vehicle that officers believed were of value—items such as jewelry, laptop computer—and that might entice someone to break into the towed vehicle. Officer Eickhoff acknowledged there were tools and other items in the vehicle, but he did not list any of those items on the tow inventory report because, based on their condition, he did not believe them to be of much, if any, value.

### III. DISCUSSION

McPeters does not dispute that Officer Eickhoff had probable cause to stop and arrest him. Rather, McPeters contends that the evidence from his vehicle must be suppressed because, in violation of the Fourth Amendment, the officers unlawfully searched his car prior to having it towed. *See* ECF No. 35, p. 1. McPeters also contends that suppression is required because Officer Eickhoff's decision to search the car for drugs or guns was predicated on pre-*Mirandized* statements he made after he was taken into custody. *Id.* McPeters argues those statements were obtained in violation of the Fifth Amendment and any evidence they yielded should be suppressed as the fruit of the poisonous tree. *Id.* The Court will address each alleged constitutional violation in turn.

    A.    **FOURTH AMENDMENT VIOLATION**

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by the government. U.S. Const. amend. IV. For a search to be reasonable, the government generally must obtain a warrant supported by probable cause before "physically intruding on constitutionally protected areas" or otherwise searching areas or items in which an individual has a reasonable expectation of privacy. *Florida v. Jardines*, 569 U.S. 1, 8-10 (2013). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 134 S.Ct. 2473, 2482, (2014).

Based on the factual findings, there is no question the officers conducted a warrantless search of McPeters's car after he was taken into custody on the outstanding warrant for involuntary manslaughter and assault. According to Officer Eickhoff, he and Officer Meyer searched McPeters's car for two reasons: First, to inventory any valuables left in the vehicle before having it towed and second, based on probable cause, to search for contraband; specifically, drugs or guns. Thus, as the United States asserts in its opposition, the search at issue requires consideration of two different exceptions to the warrant requirement of the Fourth Amendment: the automobile and inventory search exceptions.

The "automobile exception" to the warrant requirement "'authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity.'" *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). *See also United States v. Shackleford,* 830 F.3d 751, 753 (8th Cir. 2016) ("Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the automobile and seizure of the contraband."). Probable cause to search exists when there is "a fair probability

7

that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Bieri*, 21 F.3d 811, 815 (8th Cir. 1994) (Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched."). The Supreme Court has described probable cause as "a practical, nontechnical conception" that is based on "common sense conclusions about human behavior." *Gates,* 462 U.S. at 231. It is a "fluid concept" that turns on "the assessment of probabilities in particular factual contexts" and is not "readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. In determining whether probable cause exists, courts must analyze the totality of the circumstances surrounding the intrusion. *Id.* at 238.

The Supreme Court has also recognized inventory searches as an exception to the warrant requirement of the Fourth Amendment. *See Colorado v. Bertine,* 479 U.S. 367, 372 (1987). Under this exception, "a police officer, after lawfully taking custody of an automobile, may conduct a warrantless inventory search of the property to secure and protect vehicles and their contents within police custody." *United States v. Williams,* 777 F.3d 1013, 1016 (8th Cir. 2015). As the Eighth Circuit has held, when conducting a valid inventory search, police are "engaging in their community caretaking function—not their criminal investigatory function;" as such, "they do not need a warrant or probable cause." *United States v. Taylor,* 636 F.3d 461, 464 (8th Cir. 2011). The United States bears the burden of showing that its conduct complied with the inventory search exception to the warrant requirement. *Id*.

### 1. *The search fell within the inventory search exception*

Based on the foregoing factual findings, even though Officer Eickhoff observed (and his body camera recorded) items such as tools, a bag, and trash, in McPeters's car, he did not list those

8

items on the Tow Inventory Report. Officer Eickhoff explained he believed that, based on their condition, those items were of little value. The officer further explained his practice was to document only items such as jewelry and computers that were of high value and/or that might entice a would-be thief to break into the vehicle. McPeters argues Officer Eickhoff's failure to inventory anything in his vehicle despite the presence of several tools, including power tools, coupled with statements made by the officers before and during the search about what they expected to find in his car demonstrates the officers used the pre-tow inventory as a pretext to conduct an unlawful investigatory search. *See* ECF No. 60, p. 10.

To be valid, "[t]he search of a vehicle to inventory its contents must . . . be reasonable under the totality of the circumstances, and may not be a ruse for a general rummaging in order to discovery incriminating evidence." *Taylor,* 636 F.3d at 464 (internal quotations omitted) (quoting *United States v. Hall,* 497 F.3d 846, 851 (8th Cir. 2007) and *Florida v. Wells,* 495 U.S. 1, 4 (1990)). In evaluating whether, under the totality of the circumstances, a purported inventory search was a "ruse" used by police to search for incriminating evidence the Eighth Circuit has consistently considered the following two factors: (1) did police adhere to standardized procedures established for conducting an inventory search and (2) even if police failed to adhere to standardized procedures, was there "something else" present to suggest that the police were engaging in their criminal investigatory function, not their caretaking function in searching the vehicle? *See Taylor,* 636 F.3d at 464-65 (reversing district court's denial of defendant's suppression motion where police failed to adhere to standardized procedure requiring a complete inquiry of all contents and the "something else" suggesting inventory search was pretextual was the officer's testimony that the basis for the traffic stop, arrest, tow, and inventory search was the officer's belief defendant had narcotics in his vehicle and but for that belief officer would not have arrested defendant,

9

impounded his vehicle, or inventoried the contents of his truck); *Hall,* 497 F.3d at 851 (upholding denial of suppression motion on grounds that even if officer failed to abide by standardized procedures, the "something else" was not present because police had legitimate reason to tow when property owner asked police to tow defendant's vehicle from its property); *United States v. Rowland*, 341 F.3d 774, 779-81 (8th Cir. 2003) (holding failure by law enforcement to follow standardized procedures in place coupled with other facts suggested law enforcement "sifted through the vehicle's contents searching only for and recording only incriminating evidence").

Citing the Eighth Circuit's decision in *Rowland*, McPeters argues suppression is warranted because, based on the evidence presented in this case, "police raised the inventory search banner in an after-the-fact attempt to justify a simple investigatory search for incriminating evidence." 341 F.3d at 780. However, there are significant distinctions between the facts on which the Eighth Circuit rested its conclusions in *Rowland* and the facts presented here. For example, in *Rowland*, the Eighth Circuit found that the first factor—did police follow their own standardized procedures—weighed against the police. Specifically, the court in *Rowland* found that the tow policy required officers to complete an inventory of "***all*** property in the vehicle." *Id.* at 779 (emphasis added). Even though the vehicle contained an "enormity of stuff" such as a purse, a cellphone, an incomplete set of tools, and a dog, officers testified that they documented only things that "might be used as possible ***evidence.***" *Id.* at 779-80 (emphasis added).

In contrast, the evidence presented here demonstrates that the HPD tow policy required officers to complete a Tow Inventory Report but did not specify how that report should be completed. Unlike the tow policy in *Rowland,* the evidence presented here suggests Officer Eickhoff was free to exercise his discretion in deciding how to fulfill the requirement that he

complete a Tow Inventory Report. The Eighth Circuit has held that officers may use discretion in conducting inventory searches "so long as that discretion is exercised according to standard criteria and on the basis or something other than suspicion of evidence of criminal activity.'" *Hall*, 497 F.3d at 851 (quoting *Colorado v. Bertine*, 479 U.S. 367, 375 (1987) (holding warrantless inventory search valid if it is conducted pursuant to standardized police procedures and not done in bad faith or for the sole purpose of investigation)). Officer Eickhoff testified that his body camera recorded all items he observed in McPeters's car and, in following his department's tow policy, it was his "standard operating procedure" to only inventory items he deemed to be of high value—in other words items that would likely entice a would-be thief to break into the towed vehicle. While the undersigned may not agree entirely with Officer Eickhoff's approach, this Court cannot say, based on the evidence of record, his interpretation contravened the HPD policy, was unreasonable, or otherwise made in bad faith. *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403-404 (2006) ("the ultimate touchstone of the Fourth Amendment is reasonableness" and "[a]n action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action").

      Despite McPeters's suggestions to the contrary, Officer Eickhoff's admission that one of his aims in conducting the search was to look for drugs or guns does not prevent the search from being a lawful inventory search. The Eighth Circuit has held that the presence of an investigative motive "does not invalidate an otherwise valid inventory search." *United States v. Arrocha*, 713 F.3d 1159, 1164 (8th Cir. 2013) (quoting *United States v. Garner*, 181 F.3d 988, 991 (8th Cir. 1999)). Even conclusive evidence of an investigatory motive on the part of law enforcement will

11

not taint an inventory search, "as long as their sole purpose is not to investigate a crime." *United States v. Petty*, 367 F.3d 1009, 1013 (8th Cir. 2004).

The evidence presented here makes clear that the decision to search McPeters's car was precipitated, first and foremost, by Officer Eickhoff's realization that there was an active warrant for McPeters's arrest for involuntary manslaughter and assault. McPeters was the only occupant in his vehicle, which was in a busy intersection and situated in a way that would potentially endanger other motorists if left in place. At that point, Officer Eickhoff realized he would need to take McPeters into custody and thus would need to tow McPeters's vehicle. Based on the evidence presented, what began as circumstances that would likely require an inventory search evolved into a parallel criminal investigation only after McPeters answered "yeah" in response to Officer Eickhoff's question asking if there were drugs or guns in his car.

The facts in this case stand in contrast to the facts of *Rowland,* where the court concluded the search looked more like an investigative search in part because "law enforcement called for a drug-sniffing dog to be brought to the scene;" "both [suspects] were detained, even though they were not arrested;" officers "repeatedly asked Rowland whether there was contraband in the vehicle;" and "Deputy Madison and Sergeant Thomas . . . testified the search was partly conducted to investigate the possibility Rowland might be trafficking narcotics." *Rowland,* 341 F.3d at 780. In sum, the evidence of record in this case makes clear that investigating a crime was not the sole purpose of the pre-tow search conducted by Officers Eickhoff and Meyer. As such, the fact that officers conducting the inventory search may have also been on the lookout for incriminating items does not prevent this Court from finding that the search fell within the inventory search exception to the Fourth Amendment warrant requirement. *United States v. Harris,* 795 F.3d 820, 821 (8th Cir. 2015) (holding in conducting inventory searches police may

"keep their eyes open for potentially incriminating items they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime").

### 2. *The officers had probable cause to search for contraband*

Suppression is not warranted even if the search did not constitute a valid inventory search because the pre-tow search of McPeters's vehicle also falls within the automobile exception to the warrant requirement. As is more fully discussed above, the "automobile exception" to the warrant requirement "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *Davis*, 569 F.3d at 816 (internal quotations omitted); *see also Shackleford,* 830 F.3d at 753 ("Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the automobile and seizure of the contraband.").

Based on the factual findings, Officer Eickhoff arrested McPeters on an active warrant for Involuntary Manslaughter and Assault Second Degree. Officer Eickhoff advised McPeters that his vehicle was going to be towed and that they would need to do an inventory search of the vehicle. The officer then asked McPeters if there were any firearms or drugs in the vehicle and McPeters responded "yeah." At that point, the officer was aware of McPeters's outstanding warrants and presumably his criminal history, which he asked dispatch to run when he first encountered McPeters. Given McPeters's response to the officer's question, based on the totality of circumstances, Officer Eickhoff had probable cause to search the vehicle for firearms and drugs.

When probable cause exists to believe that contraband is located inside the vehicle, a police officer may search the passenger compartment and trunk under what is known as the automobile exception. *United States v. Smith*, 990 F.3d 607, 612 (8th Cir. 2021). If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the

13

vehicle and its contents that may conceal the object of the search. *Id*. In sum, even if the search somehow did not constitute a valid inventory search, the search of the vehicle following Defendant's arrest was lawful because it was based upon probable cause.

  **B.**  **FIFTH AMENDMENT VIOLATION**

  McPeters argues police violated his Fifth Amendment rights by obtaining statements from him after he was taken into custody but before he was advised of his *Miranda* rights. ECF No. 35, p. 1. McPeters contends any evidence found because of his unwarned statements should be suppressed as the fruit of the poisonous tree. *Id.* Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 448-450, 455 (1966), the Supreme Court recognized that custodial interrogations have the potential to undermine the privilege conferred by the Fifth Amendment against self-incrimination by possibly exposing a suspect to physical or psychological coercion. To guard against such coercion, the Court established a prophylactic procedural mechanism that requires a suspect to receive a warning before any custodial interrogation begins. *Id.* at 444. Unless suspects are warned of their Fifth Amendment rights, any pretrial statements elicited from them are inadmissible at trial. *Id.* at 492. The protections set forth by the United States Supreme Court in *Miranda* are triggered only when a defendant is both in custody and being interrogated. *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995).

  In opposing McPeters's motion, the United States asserts McPeters's pre-*Miranda* statements are admissible under the public safety exception to *Miranda*, articulated by the Supreme Court in *New York v. Quarles,* 467 U.S. 649 (1984). *See* ECF No. 41, p. 9-10. This Court agrees. Under the public safety exception, even if *Miranda* warnings were not yet given, a suspect's answer may be admitted into evidence if it was obtained in response to a question asked in furtherance of

14

public safety and not designed solely to solicit testimonial evidence. *Quarles,* 467 U.S. at 655–56, 659; *see United States v. Williams,* 181 F.3d 945, 954 n. 13 (8th Cir.1999). The Eighth Circuit has held that the public safety exception "applies when 'police officers ask questions reasonably prompted by a concern for the public safety.'" *Id.* (quoting *United States v. Liddell,* 517 F.3d 1007, 1009 (8th Cir. 2008)). The public to be protected can include the officers themselves and, considering "the risk of police officers being injured by the mishandling of unknown firearms or drug paraphernalia," there is a sufficient public safety basis for officers to ask a suspect who has been arrested and secured whether there are weapons or contraband in a car, apartment, or other place police are about to search. *Liddell,* 517 F.3d at 1009-10 (defendant's statement he knew a gun was in his car fell within the public safety exception where, upon discovering an unloaded pistol in defendant's car, the officers asked him if there was anything else in the car that they needed to know about that could hurt them); *see also United States v. Luker,* 395 F.3d 830, 831-32 (8th Cir.2005) (the public safety exception applied when the arresting officers, who were aware of the suspect's history of methamphetamine use, asked the suspect before searching his vehicle whether there was anything in it that was not supposed to be there or that could hurt them and suspect responded that his shotgun was in the trunk); *United States v. Everman,* 528 F.3d 570, 572-73 (8th Cir. 2008) (officers' pre-*Miranda* warning questioning of arrestee about whether he had any weapons on him fell within the public safety exception to Miranda; rangers acted reasonably where the rangers knew that Everman had an associate nearby; rangers were in a remote and isolated area with two men with known criminal records).

In this case, it was objectively reasonable for Officer Eickhoff to ask McPeters if he had anything in this car such as drugs or firearms. When he asked the question, Eickhoff had just arrested McPeters based on an active warrant for involuntary manslaughter and assault. He had

decided that the car McPeters had been driving would need to be towed because it was positioned in a place that would pose a danger to other motorists. Based on the HPD tow policy, Eickhoff knew he (and/or other officers) would need to conduct an inventory search and then turn the car over to a tow truck driver, who could also be at risk if the car contained dangerous items. Under the totality of circumstances, there was a sufficient public safety basis for officers to ask McPeters whether there were weapons or other contraband in his car before proceeding with a search. In sum, McPeters's motion to suppress statements should be denied because the questions Officer McFarland asked of McPeters were reasonably prompted by a concern for the public safety, including the officer's own safety, and, therefore, falls outside the requirements of *Miranda*.

For the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Defendant McPeters's Motion to Suppress Evidence and Statements (Doc. 35) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Trial in this case will be set by separate order before the **Honorable Joshua M. Divine**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: January 29, 2026.